IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:14-604-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| COREY CORNELIUS METZ ) | |
| _____ ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1403). Seeking compassionate release, the defendant claims that his health and well being are in danger due to the COVID-19 pandemic. He also contends that but for the crack/powder cocaine disparity which would be eliminated by the EQUAL Act, his sentence would be much lower today.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

>is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government acknowledges that the defendant has met the exhaustion threshold. Thus, the court will proceed to review the matter on the merits.

## PROCEDURAL HISTORY

The defendant pleaded guilty to conspiracy to possess with intent to distribute and distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846 and 851. The evidence produced at the guilty plea colloquy revealed that the defendant and others engaged in a conspiracy to distribute powder cocaine and crack cocaine in and around the Newberry, South Carolina area. The defendant's role within the conspiracy was the purchase and later distribution of drugs for resale.

In June 2015, the government filed an Information pursuant to 21 U.S.C. § 851 notifying the defendant that he was subject to enhanced penalties by virtue of certain prior convictions on his record (ECF No. 343).

The Presentence Report (PSR) (ECF No.2472) indicated that the defendant's total offense level was 27 and his criminal history category was VI.[2] This would have yielded a

---

[2] The defendant's criminal history is significant and ecompassed multiple offenses involving drug dealing including 3 convictions for distribution of crack cocaine and a conviction for possession with intent to distribute marijuana. He has twice violated his state parole which was revoked in both instances.

sentencing range of 130 to 162 months imprisonment. At sentencing, however, this court sustained an objection lodged by the defendant with regard to the computation of his criminal history category. Specifically, the court agreed that the defendant was not under a criminal justice sentence when he committed the instant offense. This had the effect of lowering his criminal history category to V and the new sentencing Guideline range then became 120 to 150 months. Additionally, as indicated in the Judgment and Commitment entered in this case (ECF No. 2462), the court determined that the cocaine base attributable to the defendant was not applicable. Accordingly, the defendant was held accountable for cocaine powder, not cocaine base. The amount powder cocaine attributable to the defendant was 2,401.77 kilograms of converted drug weight.

The defendant has served 36 months of the 120-month sentence imposed in this case, which means that he has served barely 30 percent of his sentence.

Neither the government nor the defendant have provided information to the court regarding the defendant's post-sentencing conduct.

## DISCUSSION

### I. *The Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has

a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The defendant contends that his health and well-being are in jeopardy due to various medical ailments, including COVID-19. In particular, he claims that he has a stomach illness and fungus on his body that badly itches.

The government suggests that these ailments are not on the CDC's list of risk factors and thus, he has not demonstrated an extraordinary and compelling circumstanced based on medical or heath reasons that warrant compassionate release. This court agrees.

## II. *Intervening Changes in Sentencing Law*

As an additional ground for seeking compassionate release, the defendant contends that his sentence today would be vastly different due to intervening changes in sentencing

law. In making this assertion, the defendant is plainly wrong. He relies upon the so-called EQUAL Act, a bill now pending in Congress which would eliminate the remaining 18 to 1 disparity between crack cocaine and powder cocaine.

This argument is flawed in two respects. First, the EQUAL Act is a bill pending in Congress that has not been enacted into law. Secondly, as noted above, this court removed all reference to crack cocaine at the defendant's sentencing, and thus, even if the EQUAL Act were passed, it would have no impact on the defendant's sentence.[3]

### III. *Other Claims Raised by Defendant*

Finally, the defendant contends that his life and limb are in danger because he is viewed as a "snitch" by other inmates. As the government points out, the defendant offers no corroboration of this allegation. The Plea Agreement (ECF No. 2313) on file in this case contains no paragraph relating to the defendant's cooperation. Moreover, even if the defendant were subject to threats by other inmates, the BOP is fully equipped to deal with this by separating related co-defendants at different correctional institutions.

### CONCLUSION

The court thus has little difficulty concluding that the defendant has not demonstrated an extraordinary and compelling reason for his immediate release. As a result, it is not

---

[3] It bears mention that for the past 15 years, this court has always issued a variance at sentencing for crack cocaine offenders, eliminating the 18 to 1 disparity, disregarding the Guidelines, and sentencing crack and powder cocaine defendants on a 1 to 1 ratio. Thus, even if the court had considered crack cocaine as part of the sentencing formulations in this case, it would have nevertheless had no impact on the defendant's sentence given the court's consistent policy of a variance in such situations.

necessary for the court to address the § 3553(a) factors. The defendant's motion (ECF No. 2743) is respectfully denied.[4]

    IT IS SO ORDERED.

August 31, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[4] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")